# MARY M. BOSTWICK *et al.*

*v.*

# DAVID HESS *et al.*

1. CONTRACT—*giving option of purchase is not a contract of sale.* An agreement which gives to a party " the right, option and refusal to purchase, at any time within the period of four months," certain lands, upon certain terms and conditions, to be reduced to writing at the time of such purchase, if made, gives to the party having such option no interest, either legal or equitable, in the land.

2. And the fact that the party having the option takes possession of the land, without the knowledge or consent of the owner, and makes improvements thereon without having complied with the conditions upon which the option and right of purchase depend, whilst it may indicate his intention to make the purchase, does not make a contract of sale or give him any interest in the land.

3. SAME—*forfeiture for non-compliance with terms.* Where the payment of money within a specified time is of the essence of any contract for the purchase of land, the non-compliance with such condition is a sufficient ground for a denial of any claim of right in the land under the contract; and if any declaration of forfeiture is necessary in such case, a sale of the land to another party after the expiration of the time for payment, is sufficient evidence of such forfeiture.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

This was a bill in equity, to enforce a conveyance of a certain eighty acres of land, lying just south of the city of Chicago, founded upon an agreement in writing, of which the following is a copy:

"Articles of agreement made and entered into this fifth day of June, A. D. 1855, by and between David Hess, of Naperville, in the county of DuPage, and State of Illinois, of the first part, and John Bostwick, of the city of Alton, in the State aforesaid, of the second part, as follows, viz: The said first party, for and in consideration of $500, to him in hand paid by the said second party, the receipt whereof is hereby acknowledged, has and does hereby give and grant unto the said second

party, and none others, the right, option and refusal to pur-
chase, at any time within the period of four months from the
date hereof, upon the terms and conditions hereinafter named,
the following described premises, viz: the west half of the
south-west quarter of section three (3), in township thirty-eight
(38) north, range fourteen (14) east, containing eighty acres,
more or less.    The terms and conditions of said purchase, of
which a refusal is given as above, are as follows, viz:    On or
before the fifth day of October next, the said second party shall
pay unto the said first party the sum of $2600 in cash, and
thereupon a mutual contract of sale and purchase shall be
drawn up, and executed and delivered by and between the said
parties, by which contract the said parties shall mutually con-
tract and agree as follows, viz:    The said first party shall cove-
nant on his part to execute and deliver to the said second party
a good and sufficient deed in fee simple, at the expiration of
the term in the said contract mentioned, if the said second
party, on his part, shall have promptly fulfilled all his cove-
nants therein contained, and the said second party, on his part,
shall covenant to pay to the said first party, his executors, etc.,
as follows, viz:    $1100 on the fifth day of June, A. D. 1856;
the further sum of $2500 on the fifth day of June, A. D. 1857;
the further sum of $4000 on the fifth day of June, A. D. 1858;
the further sum of $5000 on the fifth day of June, A. D. 1859,
with interest thereon from the fifth day of June, A. D. 1855,
at the rate of 6 per cent per annum, the interest payable annu-
ally; the further sum of $5000 on the fifth day of June, A. D.
1860, with interest thereon at the rate as above from the fifth
day of June, A. D. 1855, the interest payable annually; and
the further sum of $5000 on the fifth day of June, A. D. 1861,
with annual interest as above from the fifth day of June, A. D.
1855, and shall give his promissory notes for the aforesaid
sums, payable at the times and in the manner above specified.

"And the said second party shall also covenant to pay all
taxes and assessments that may be levied and assessed upon
said lands during the continuance of said contract.

" The said second party shall also covenant to inclose said lands with a neat and substantial fence on or before the first day of January, A. D. 1856.

" And shall also, within said time, (1st January, 1856,) break the ground and grade two streets through said lands.

" The said second party shall also covenant in and during the spring of A. D. 1856, to set out shade trees and evergreens in and about said lands and the streets through the same.

" And shall decorate and beautify said grounds, and shall put said grounds, as soon as practicable, in a high state of cultivation, and keep them so.

" The said second party shall also, within the year A. D. 1856, erect on said premises two dwelling houses, suitable for the residence of gardeners, who are to work upon and beautify said grounds.

" It is further expressly understood and agreed, that the times of payment in said contract shall be considered and taken as the essence of said contract, and for a failure to pay promptly at the time any part of said purchase money, said contract shall be forfeited, at the option of the said first party.

" And the said second party, on his part, covenants and agrees that the said $500 by him paid to the said first party on the execution of these articles, shall be absolutely and forever forfeited to the said first party, should he, the said second party, fail or refuse to complete the said contract of purchase on the terms and conditions above specified, and within the time above limited.

" In testimony whereof the said parties have hereunto set their hands and seals, and to the duplicate hereof, the day and year first above written.

" D. HESS,          [seal.]
" In presence of     } " JOHN BOSTWICK."  [seal.]
    C. B. HOSMER." {

It appears that Bostwick, after the execution of the agreement, in the summer of 1855, without paying ·the $2600 or entering into the contract provided for in the option, and without the consent or knowledge of Hess, entered upon the prem-

ises, which were then uninclosed prairie, and caused the land to be fenced, some streets to be graded, and some breaking to be done.

On the 12th of September, 1855, Bostwick died at the house of Benjamin F. Downing, in Chicago. Mrs. Bostwick and her father, John Higham, were with him at the time of his death. They afterward consulted with Mr. Cornell, as an attorney, in regard to the estate of Bostwick. When the term of the option, four months, had expired, Hess came into Chicago from his residence at Naperville, and on the 6th or 7th of October, 1855, notified the parties that the optional contract was forfeited. Mr. Cornell, as attorney for the Bostwick estate, tried to get Hess to allow the value of the improvements, which it seems had not been paid for, except in small part, and remained a claim against the estate. Hess refused to allow any thing for the improvements, because they had been put on the land without his knowledge or consent. He, however, did not wish to appropriate the improvements, and expressed a willingness to let any one have the land at the price fixed in the forfeited option; and he thereupon made a verbal agreement with Cornell, that if he could find a purchaser, he (Hess) would sell the premises to him and allow Cornell to retain for the Bostwick estate the excess of the purchase money over the price fixed in the Bostwick option. Cornell succeeded, at length, in finding a purchaser in one Ralston B. Palmer, and on the 9th day of October, 1855, Hess, at the request of Cornell, executed a contract of sale for the premises in question to Ralston B. Palmer, for $29,700, which was $2,400 more than the price fixed in the option to Bostwick.

The cash payment was $5,000, of which Cornell was allowed to retain $2,400 for the benefit of Bostwick's estate.

Subsequently, Palmer executed to Lewis W. Stone and Benjamin F. Smith contracts of sale for certain undivided interests in the premises.

It appears, from the evidence, that Hess required, as a condition to the sale by him to Palmer, that Cornell should obtain from the Bostwicks, and surrender, the option of June 5th,

and also that he (Hess) should have a bond of indemnity against any claims of Bostwick's estate, to be signed by Palmer, the purchaser, Mrs. Bostwick, the widow, and John Higham, the father-in-law of Bostwick, also by Paul Cornell, the attorney of the Bostwicks, and John M. Krum, whose money had paid the $500 for the option. In pursuance of this requirement, the option was surrendered and the bond executed and delivered. Mr. Krum testifies that he signed the bond upon an understanding that administration proceedings should be had in Cook county, and any interest which Bostwick might have in the premises should be sold by the administrator.

November 17, 1855, Benjamin F. Downing, as a creditor of Bostwick's estate, filed a petition to be appointed administrator, and letters of administration were issued to him. April 22, 1856, the administrator, in pursuance of an order of sale, on his petition, of any interest Bostwick might have in the property, sold the premises to Ralston B. Palmer, and the sale was approved and confirmed by the court.

Palmer, Stone and Smith having agreed upon a partition of their respective interests in the premises, Hess, on the 18th of October, 1859, conveyed to each of the parties in severalty, by metes and bounds.

When Bostwick died, he left him surviving, his widow, Mary M. Bostwick, and seven children, the three eldest of whom were of the respective ages of forty-two, forty, and thirty years, the rest were under age—the last one of whom to arrive at majority became of age March 21, 1866.

This bill was filed by the heirs of Bostwick on the 7th day of December, 1872.

The defendants were the said Hess, Palmer, Stone, Smith, Cornell, and others who have, from time to time, acquired title through them, or a portion of them, to lots or parcels of the property.

The court below, on hearing upon answers, replications and proofs, dismissed the bill, and the complainants appealed.

Mr. EDWARD ROBY, for the appellants.

Messrs. GRANT & SWIFT, Messrs. ROSENTHAL & PENCE, Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, Messrs. C. B. HOSMER & SON, and Messrs. BENNETT, KRETZINGER & VEEDER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

We are unable to see that Bostwick or his heirs ever had any interest, legal or equitable, in this land. The agreement of June 5th, 1855, of itself, certainly gave no such interest. It gives merely what it purports on its face, " the right, option and refusal to purchase, at any time within the period of four months." The $500 paid was no part of the purchase price of the land. It was given for the right to purchase at any time within four months, at a named purchase price.

But the position is taken, on behalf of appellants, that Bostwick's entry upon the premises, and making the improvements he did, was an election to purchase, and changed the option into an agreement for the sale and purchase of the land, binding as such upon both parties.

We can not adopt this construction of the agreement of June 5, 1855.

The proof shows, that what was thus done by Bostwick was without the knowledge or consent of Hess. These acts of Bostwick undoubtedly indicated his intention to take the land and to make the purchase thereof. But something more than signifying his election to take the land on the terms offered was required on the part of Bostwick, in order to make a contract of sale or to give him any interest in the lands. His right was one to purchase *upon the terms and conditions named*, which were: the payment of $2,600 cash within four months, and the entering into a written contract of purchase, containing certain specific covenants, and the execution of promissory notes for the deferred payments. Bostwick never performed either one of those things, or offered so to do, and so never exercised the right *to purchase* within the four months which he enjoyed, which he could only do upon the aforenamed

terms and conditions. Consequently he acquired no interest in the land.

According to appellants' construction of the option, Bostwick, after entering upon the land and making the improvements he did, was not at liberty afterward to abandon the land and decline to make the purchase of it, but was absolutely bound, by force of such acts, as a purchaser, and obliged to pay the named purchase price for the land. We must think that, notwithstanding the making of said improvements, it was still optional with Bostwick whether he would, within the four months, make the purchase, pay the $2600, and enter into the written contract of purchase, or decline to do so. And so, according to the assumed construction, by the making of these improvements, without Hess' knowledge or consent, there arose an actual contract of sale by Hess, without the payment of the $2600 in cash, thus converting an agreement to sell for cash into an actual sale on credit. This would be departing from the duty of courts to enforce agreements as made, and not to make new contracts for the parties. *Smith* v. *Brown,* 5 Gilm. 309.

In support of appellants' construction, an argument is attempted to be drawn from the form of the wording of three certain provisions relating to improvements, to-wit: the ones to " break the ground and grade two streets through said lands;" to " decorate and beautify said grounds, and put said grounds, as soon as practicable, in a high state of cultivation;" and " erect on said premises two dwelling houses," etc. It is said that these are not named as things to be covenanted to be done, in the contemplated mutual contract of sale and purchase to be drawn up, but that they are contracted to be done in and by the agreement of June 5, 1855, and therefore a right of possession was thereby given to at once enter upon the land and make these particular improvements, and that the making of them formed part of the purchase price of the land. It does appear, that in the enumeration in the agreement of June 5th, of the specific covenants which the contract of sale, if made, should contain, these particular provisions are not literally de-

scribed as covenants to be therein inserted. But such must have been the intent. It could not have been contemplated that improvements were to be made upon the premises before they were purchased, the $2600 paid, and the "mutual contract of sale and purchase" entered into, or at least that before then there was any right of possession given, and that such improvements could be made as a matter of right.

We consider that all the things mentioned as to be done, were things to be contained in the mutual contract of sale and purchase to be drawn up. There is no reason appearing why some of them should be covenants to be inserted in such contract, and others to be present covenants. It does not agree with the nature of the transaction, and we can not think that such was the intention, although the words of these particular provisions named are, in form, words of present agreement.

We are of opinion that there was no right of possession given by the agreement of June 5th; that Bostwick's entry upon the land was unauthorized; that the improvements he made were entirely voluntary and at his own risk, which would have only been available to him in case he had effected a purchase of the land on the terms and conditions offered to him, but as he did not do so, his improvements count for naught, as founding any claim of right thereupon; and that Hess' consent that Bostwick's estate should have the benefit of the value of the improvements, was but a mere gratuity on the part of Hess.

There can be no doubt that the agreement of June 5th made the payment of $2600, within four months, of the essence of any contract for the purchase of the land. There being no pretense that this payment has ever, at any time, been made or offered to be made, the non-compliance with this essential condition would be a sufficient ground for the denial of any claim of right in the land under this agreement. *Smith* v. *Brown*, 5 Gilm. 309; *Kemp* v. *Humphreys*, 13 Ill. 573; *Milnor* v. *Willard*, 34 id. 39; *Benedict* v. *Lynch*, 1 Johns. Ch. 369.

Aside from the actual declaration of forfeiture that there was in this case, the sale of the property to Palmer, on the 9th day

of October, 1855, would have been sufficient evidence of the forfeiture of the contract, if any declaration of forfeiture on the part of Hess had been necessary. *Warren* v. *Richmond*, 53 Ill. 52.

The further ground is taken by appellants' counsel, that Palmer appeared as a volunteer to carry out the contract of Bostwick, and that Hess accepted performance by him in lieu of performance by Bostwick, and thereupon Palmer became trustee for the heirs of Bostwick, or that at least it was by means of Bostwick's improvements and possession that Palmer obtained the title from Hess, and so he held it in trust.

There is a lack of any proof that Palmer performed as a volunteer in the place of Bostwick, and that Hess accepted performance from him in lieu of performance by Bostwick. The proof shows the transaction to have been a real purchase by Palmer for his own exclusive benefit, in entire independence of Bostwick or his heirs, and that Hess allowed Cornell to retain the excess of the purchase price over the price fixed in the forfeited contract, to pay for the improvements.

As to the so-called Bostwick's improvements and possession, we find that Bostwick was not the rightful owner of the improvements, and had no right of possession, and there is nothing to show that it was by means of these improvements or Bostwick's possession that Palmer was enabled to obtain the title from Hess. The view we have taken has rendered it unnecessary to consider the other questions raised, of the effect of the administrator's sale, and *laches*.

We have not stopped to examine the proofs as to whether there has been otherwise any unwarrantable intermeddling by Cornell with the property of Bostwick's estate, or any failure to account in respect thereto, as, if there be any ground of complaint on such score, the remedy is at law and not in equity, and the matter is not properly involved in this bill. Any improper combination by him with any of the other defendants to wrong the estate, as charged in the bill, is unsupported by proof.

We are of opinion there was no error in dismissing the bill, and the decree will be affirmed.            *Decree affirmed.*