CURRY v. HALE et al.

Decided December 20, 1879.

(Absent, MOORE, JUDGE.)

1. When it is expressly or impliedly agreed that an incumbrance shall be deducted from the consideration, or paid by the purchaser, the vendor stands in the position of a surety, and is entitled to exoneration at the expense of the land.

2. Where a person deals with an agent, it is his duty to ascertain the extent of the agency; he deals with him at his own risk; the law presumes him to know the limit of the agent's power; and if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent.

3. But if the agent exceeds his authority, the act may be ratified by the principal; and it is not necessary that there should be any positive or direct confirmation.

4. Where with a knowledge of the facts the principal acquiesces in the acts of the agent, under such circumstances as would make it his duty to repudiate such acts if he would avoid them, such acquiescence is a confirmation of the acts of the agent.

5. It is not necessary that such knowledge shall be shown by positive evidence; it may be deduced, or inferred from the circumstances' and facts of the case.

6. The undivided interest of a tenant in common may be levied upon and sold under an attachment.

7. The co-tenants of the debtor are not proper parties to a suit for such purpose.

8. In an attachment suit in equity it is not necessary, or proper, to direct an enquiry, whether the rents and profits of the real estate will pay the debt within a reasonable time.

1879
Special Term.

Curry
v.
Hale *et al.*

Appeal from two decrees of the circuit court of the county of Kanawha, rendered one on the 18th day of December, 1876, and the other on the 28th day of May, 1878, in a cause in said court then pending, wherein C. B. Curry was plaintiff and J. P. Hale and others were defendants, allowed upon petition of A. G. Richey and G. A. Perdicaris.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decrees appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

This is an attachment in equity, under the statute. The plaintiff filed his bill at April rules, 1876, of the circuit court of Kanawha county. The bill alleges substantially that, on the 12th day of September, 1873, the plaintiff was the owner of a certain tract of three hundred and seven acres of land in said county, on which there were trust liens, then recorded, amounting to some $1,500.00; that on that day the defendant, Hale, as the agent of the defendants, Fisk, Hotchkiss, Perdicaris and Richey, negotiated for and purchased the said land for himself, and as agent for the other defendants, for the sum of $7,000.00, of which $2,000.00 was paid in cash, and two notes of $2,500.00 each were executed for the deferred payments ; that at the time of said sale and purchase the said liens were well known to said Hale and his said principals, and at Hale's request the plaintiff and his wife executed a deed to said Fisk for said land, and for the convenience and accommodation of said Fisk, Hotchkiss, Perdicaris and Richey, who were wealthy non-residents, said Hale executed the said notes for the said deferred installments of the purchase-money ; that the said $2,000.00 which was paid in cash was furnished by said defendants, Perdicaris and Richey, and that they are jointly and severally bound with said Fisk, Hale and Hotchkiss for the residue of the purchase-

money ; that it was understood and agreed between the

parties, that upon the maturity of the first of said notes, the amount of the said lien was to be paid out of said payment, to the credit of said vendees, on the purchase-money ; that said Fisk held the title to said land under the deed from plaintiff to him in trust for the said Perdicaris, Hotchkiss, Hale and Richey, to the extent of their interests therein.  About the time of the maturity of the first note a crisis came, real property decreased in value, and the defendants failed utterly to make said payment.  The plaintiff says that no part of said deferred installments have been paid ; that without the said payment, or a part thereof, he was unable to pay off said losses, and that said property was advertised by the trustee, and said defendants still failing in fraud of plaintiff's rights to furnish the money to pay them, the land was sold at public auction on the 31st of August, 1875, for $1,775.00, and was so lost to him.

The bill further alleges that the defendants, Perdicaris and Richey, have interest in lands in Fayette county, West Virginia, which he has attached in this suit.  The bill describes the lands, as in the return of the sheriff to the attachment, which regularly issued upon proper affidavit in the case, and was levied upon the interests of the defendant in said lands.  Upon the issuing of the attachment the plaintiff, under the statute designated Francis Calvert, Cornelius Calvert, Joseph Patchell and Wm. A. Quarrier guardian of William Calvert and Jas. F. Hansford as persons indebted to or having in their possession the effects of the defendants, Pliny Fisk, G. H. Perdicaris and A. J. Richey, and in his bill alleges that said persons, except Hansford, are indebted to the defendant, Fisk, in about the sum of $1,000.00, and that Hansford was a judgment debtor of said Fisk in the sum of $2,800.00, with interest and costs.  Summons issued against each of the persons thus designated, requiring them to answer.  The bill prays a decree against the said

defendants for the residue of said purchase-money, and that said property might be subjected to pay it, &c.

The deed to Fisk, and the notes of Hale, are filed as exhibits with the bill.

On the 9th day of May, 1876, the defendants, Richey and Perdicaris, appeared and filed a general demurrer to the bill which was set down for argument, and the same defendants at the same time tendered a special plea. On the 18th day of December, 1876, upon argument the court overruled the demurrer; and rejected the plea.

In March, 1877, at rules, the defendants, Richey and Perdicaris, filed their joint answer. They deny all the allegations of the bill, not expressly admitted. They admit that they were interested in the purchase of the tract of land described in the bill; but that they each represented an undivided third interest in said purchase; and that they each contributed one-third of the down payment of $2,000.00, made on said land; that the remaining one-third interest in said land was represented in equal proportions by Hale, Hotchkiss and Pliny Fisk. They deny however that John P. Hale at the time of said purchase, or at any time, was acting as agent for them, or either of them, in the matter. They deny that they at any time had any knowledge of encumbrances on said land. They aver that they never knew or heard of such encumbrances, "until about the time the first note for deferred payment was due." On learning this fact they at once caused examination of the title to said tract to be made, and then ascertained that there were two unsatisfied liens on said land, and that plaintiff had no title to a considerable and material interest in said tract of land. They therefore declined to make further payments. They proceed to state the liens, and the difficulty about an undivided fourth of the coal in said land, which E. S. Arnold and others claimed and held, as they aver. They also aver that there were other claims to interests in said land. They aver that the only inducement they had to purchase an interest in said property, was its value as

coal land.  They further aver, "that before they had any connection whatever with the transaction aforesaid, the complainant represented himself to be the owner of the aforesaid three hundred and seven acres, with a good and valid title thereto ; that it was in view of their belief in such representations, and their own ignorance of any of the aforesaid defects, that they engaged in such transaction at all.  They afterwards learned what they now here charge, that complainant misrepresented his title, and thereby fraudulently induced them to become interested in the purchase aforesaid, to the extent aforesaid. This fact and the defects in the title to the aforesaid tract, constituted the reasons which caused respondents to refuse to make any other payment, after the cash payment, on the said purchase."  They pray that plaintiff may be required to refund to them the purchase-money they had paid, and that they may be discharged from any liability in the bill charged, &c.

The plaintiff filed a special replication to this answer, in which he denies making any fraudulent representations as to his title, and insists that under his contract with their agent it was their duty to discharge the liens on the land, and relies on the fact that he conveyed with *special warranty.*

Hansford answered the bill, and insisted that he did not owe Fisk anything ; that the judgment recovered in his name was not his, and was not for his benefit.  The other defendants did not answer the bill ; and as to them, except the defendant Pliny Fisk, the bill was taken for confessed ; and as to him, it was matured for hearing upon an order of publication, duly executed.

On the 28th day of May, 1878, the court entered a decree, on the pleadings, exhibits and depositions, and adjudged and decreed that the plaintiff recover against A. G. Richey the sum of $1,506.57, with interest from that date, which was one-third of the purchase-money due, after deducting from the whole balance the amount of the two trust liens, which the plaintiff alleged in his bill was

to have been paid out of the proceeds of the first single bill when it became due ; and that plaintiff also recover against G. A. Perdicaris a like sum ; and of Jed. Hotchkiss $502.15, with interest, being one-ninth of the purchase-money yet due ; and that execution might issue for said sums ; and that unless the defendants, Richey and Perdicaris, should within sixty days pay the amounts decreed against them, then the commissioner' therein appointed should sell their interest in the tracts of land attached, describing them, or so much thereof as was necessary to pay said sums. The decree released the judgment against Hansford from the lien of the attachment ; and issued a rule to answer against the defendants, Francis Calvert, Cornelius Calvert, James Calvert, Josephus Patchell and William A. Quarrier.

Such parts of the deposition as are deemed material will be referred to in the opinion.

From the said decree Richey and Perdicaris appealed.

*William H. Hogeman*, for appellants, cited the following authorities :

Marling v. Robrecht, 13 W. Va. 440; 11 W. Va. 148; Id. 123; Whart. Agts. & Agency, §459; Id. 137; Id. 65; 1 Call 36; 3 Call. 307; 2 Rand. 12; Walk. 149; 2 Md. 63; Story on Agency 76; 2 Wash. 69; 1 J. J. Marsh. 285; 32 Me. 497; 3 Pet. 413; 19 Ill. 456; 12 Ind. 306; 22 Ind. 36; Walk. 214; 12 Smed. & M. 393; 30 Vt. 599; 37 Conn. 8; Rawle Cov. 571; 19 N. Y. 474; 7 W. Va. 392.

*William A. Quarrier*, for appellee :

1. A decree of sale, that sells the interests of defendants in certain lands, described in certain deeds filed in the cause, giving names of grantors, date of deeds, office where recorded, name of book and number of page where recorded, is a sufficient description of the interest decreed to be sold.

2. The doctrine of *Sayers* v. *Canterbury*, that in decree-

ing the sale of lands the court must have the co-tenants of the debtor owner before it, when it sells the interest of said debtor owner, does not apply to decrees in attachment suits.

Code, §§20, 21, ch. 106.

3. In an attachment suit, if there is nothing in the pleading that shows that an account should be ordered, it is not necessary to order one before decreeing sale of lands.

4. When parties associate themselves together to purchase lands, and select one of their number to make the purchase, the dormant members of the association have constructive notice of all that occurs between the seller and the active partner.

5. It is not necessary or proper in an attachment suit, to have a reference to ascertain the rents, issues and profits, before decreeing a sale.

6. Fraudulent representation that would induce a court of equity to set aside a sale must:

*a.* Be contrary to the facts.

*b.* Vendor must know them to be false.

*c.* The false representations must have mainly induced the contract.

*d.* They must be representations of facts, not apparent upon a public record, which is open to the inspection of the purchaser.

See opinions of Lord Eldon in 2 Swanston 308; Lord Devon and Lord Brougham in *Small* v. *Atwood.*

*Richard* v. *Boright,* 9 Vt. 386; *Sutten* v. *Sutten,* 7 Gratt. 234; *Griffeth* v. *Kempshall,* 1 Clark's Ch. 576; *Ward* v. *Packard,* 18 Cal. 381.

JOHNSON, JUDGE, delivered the opinion of the Court:

The demurrer to the bill was properly overruled as it clearly presented a proper case for the consideration of the court. The special plea in effect was, that neither the contract, promise, agreement, representation nor assur-

ance upon which the suit was brought, nor any memorandum or note thereof, was in writing signed by them, or their or either of their agents. The defendants did not suffer any injury by the rejection of the plea, as they set up substantially the same thing in their answer, and had the full benefit thereof.

We will now proceed to the consideration of the merits of the case. The first question that is presented is, whether it was the duty of the defendants to protect the the land from the sale under the trust deed. It was expressly agreed by Hale, when he made the purchase from Curry of the three hundred and seven acres of land, that $2,000.00 of the purchase-money should be paid in cash, and that the residue should be paid in installments of $2,500.00 each, due in one and two years from date respectively, for which Hale executed his two single bills; and that the deeds of trust upon the property should be paid out of the proceeds of the first of said deferred payments. The $2,000.00 was paid as agreed, and a deed of special warranty delivered to Hale, made at Hale's request to the defendant, Pliny Fisk, retaining upon the face thereof a lien for the purchase-money unpaid. In such cases the question is one of intention depending upon the terms of the contract; and when it is expressly or impliedly agreed that the incumbrance shall be deducted from the consideration, or paid by the purchaser, the vendor stands in the position of a surety, and is entitled to exoneration at the expense of the land. 2 Leading Cases in Eq. (White & Tudor) 1st part, 282, and cases cited. It was therefore the duty of the said Hale, or those for whom he purchased as agent, if the sale was a binding one, to protect the land from sale under the trust-deeds; and the fact that they did not do so, but permitted it to be sold under said deeds, does not exonerate them from the payment of the purchase-money.

But it is insisted, that Hale was not the agent of the defendants, Richey and Perdicaris; and if he was, he

exceeded his authority, and they are not bound by his acts. Where a person deals with an agent, it is his duty to ascertain the extent of the agency; he deals with him at his own risk; the law presumes him to know the limit of the agents power; and if the agent exceeds his authority, the contract will not bind the principal; but will the agent. *Brown, Gov.,* v. *Johnson,* 12 Smed. & M. Ch. 398; *Lester* v. *Kline,* 37 Conn. 1. But if the agent exceeds his authority, the act may be ratified by the principal, and it is not necessary that there should be any positive or direct confirmation. Story Agency, §253, and cases cited. Where, with a knowledge of the facts, the principal acquiesces in the act of the agent, under such circumstances as would make it his duty to repudiate such acts if he would avoid them, such acquiescence is a confirmation of the acts of the agent. It is not necessary that such knowledge shall be shown by positive evidence; it may be deduced or inferred from the facts and circumstances of the case.

Now with these principles before us what are the rights or obligations of the appellants? The plaintiff has a decree against them, which he desires enforced; they desire that the decree should be reversed, and a decree rendered in their favor against the plaintiff for the purchase-money they paid.

John P. Hale in his deposition says, that Pliny Fisk took the title for Hotchkiss, Hale and himself, and for Richey and Perdicaris, whom Fisk introduced into the purchase, and that the property was held by him for them, as follows, Richey and Perdicaris each one-third, and Fisk, Hotchkiss and Hale the remaining third; that at the time the sale was made, it was known that the two trust liens existed against the land, and that it was arranged that the trust liens should be discharged out of the proceeds of the first note; and that the sale under the trusts were postponed several times to await the payment of the note. On cross-examniation Hale says, he had interviews with relation to the purchase after it was

1879
Special Term.

Curry
v.
Hale *et al.*

Syllabus 2.

Syllabus 3.

Syllabus 4.

Syllabus 5.

consummated, with both Richey and Perdicaris. He testifies, that at the time of the purchase Curry said: "He believed the title to be perfect except one undivided fourth of the coal, and he believed that would go with the land; that he knew of no claimants for it; that Curry showed him an abstract of title prepared by S. A. Miller for Curry; that he could not find the abstract, but thought that it showed no imperfections in the title except the trust deeds, and the fourth undivided coal interest in the land; that before the execution of the deed, Pedicaris and Richey were not informed by him of the trust deeds, or coal interest.

Mr. Miller says, he was present at the sale to Hale, and that Curry peremptorily refused to make a deed of general warranty, and refused to make the sale on such terms.

Pliny Fisk in his deposition says, that in the fall of 1873, Dr. Hale informed him that Curry owned the property; that it was very desirable on account of a recently discovered vein of cannel coal on it, and the proximity of the land to the railroad, and Brownstown, that Curry's title to the land was perfectly good and that he could make a good deed for the property for the sum of $7,000.00; $2,000.00 was to be paid in cash on the delivery of the deed; $2,500.00, in one, and $2,500.00 in two years respectively. After this interview with Hale he, Fisk, explained the matter fully to Richey and Perdicaris, who each agreed to take a third interest in the property provided the title thereto was good, and the premises free from all encumbrance; · that he afterwards, saw Dr. Hale, and informed him "that the said Perdicaris and Richey would each take one-third interest in the Curry property, and each pay one-third of the purchase-money." He says the other third was one-ninth his, and a ninth each to Hotchkiss and Hale. He had no interview with Curry himself. In September, 1873, he was in Dr. Hale's office in Charleston, when Col. Miller, a lawyer, was there and stated that he had examined the title to the property, and that it was good; witness then

paid the $2,000.00 to Dr. Hale, who was to pay it to Curry upon his making to Dr. Hale a good deed for said property free from all encumbrance for the sum above stated.

A. G. Richey says, Dr. Hale had no authority to act for him in the transaction, other than this, "that some time in the fall of 1873 Mr. Pliny Fisk, who was then a director in the Chesapeake and Ohio Railroad Company, on his return from West Virginia informed him that there was a small tract of land owned by Curry, containing something over three hundred acres, in which there were valuable veins of coal and which was situated very near to said railroad which could be purchased for $7,000.00; that Dr. Hale, who had great experience in the purchase of real estate, had examined the title, or had had it examined, and that it was all right, and that the party could make a good deed free from all encumbrances; *and thereupon he agreed to pay one-third of the purchase-money, and was to have one-third interest in the property,* and Mr. G. A. Perdicaris, who was a near neighbor of his, agreed to pay one-third of the purchase-money and was to have a one-third interest in the property. He never saw the original deed or a copy thereof. He further says, that Perdicaris and himself each paid to Fisk one-third of the cash payment of $2,000.00, *which they understood* he should pay over to the owners of the property upon their executing a good and sufficient deed for the premises, free from all encumbrances. He learned of the liens and imperfections in the title in 1874. To the question: "Did you ever request, or authorize any one for you to request, a postponement of the sale of the property under the trust deeds or either of them?" answered: "I have no recollection of making any such request." He further stated that Mr. Perdicaris, on account of sickness, was unable to be examined as a witness in the cause.

The foregoing is the substantial part of the testimony on the subject of the agency of Dr. Hale in the purchase

of the said property. It shows to my mind conclusively, that all the parties express great confidence in Dr. Hale's judgment, and that the whole matter was confided to him ; and if there was any doubt about this, it is set at rest by the fact that for two years and a half after the cash payment of $2,000.00 was made no complaint whatever is heard, and not until the demurrer of the appellants is filed on the 9th day of May, 1876, as far as the record discloses, is it known to the plaintiff that they deny that Hale had the authority to make the contract. As the records of the county of Kanawha were open to them, where the deed to Pliny Fisk for their benefit had been recorded for nearly two years before they made their appearance in the cause, and where the trust liens were recorded, and where an abstract of the title to the land could have been obtained, they must be presumed to have had knowledge of the facts of which they now complain, and must be deemed to have confirmed the act of the agent, Dr. Hale, even if he had exceeded his authority. It would under the circumstances be grossly unjust to the plaintiff, if the appellants could be permitted for years to lie silently by, make no objection to the sale, or the title, and then, when called upon for the purchase-money, deny the authority of the agent who made the purchase for them. If they had promptly repudiated the acts of their agent, the plaintiff might now occupy a very different position ; for the property was not sold under the trust deeds until the 31st day of August, 1875, nearly a year after the first note of $2,500.00 was due and payable.

The charge of fraudulent representations of the plaintiff set up in the answer of the appellants to the bill is wholly unsustained by the evidence.

Syllabus 7.      It is assigned as error, that the decree directs a sale of the interest of the appellants in sundry tracts of land held by them and others as tenants in common, without ascertaining what such interests are, and without having before the court the parties owning the other interests. It

is true, that it appears that the lands are owned by the appellants and others as tenants in common, and it also appears what the interests are, for their deeds are referred to in which their interests are apparent. It was not only unnecessary to have the parties holding the remaining interests before the court, but they would have been improper parties, as no decree could have been made affecting their interest. The interests of the appellants are undivided and as such liable to be sold for their debts, and the purchaser at the sale would take their interest as tenants in common with the original grantors in the deed. Freeman on Co-tenancy and Partition, §213 and cases cited

It is also assigned as error, that the decree directs a sale without having first ascertained whether there were any liens on the property; and also because it was not first ascertained whether the rents and profits would not pay the amount of the debt in a reasonable time. Whether in an attachment suit in equity, before selling the real estate subject to the lien of the attachment, it is necessary under any cirsumstances to refer the cause to a commissinner to ascertain and report the liens on the said estate and their priorities, we do not in this case decide, because the question does not fairly arise. It is a sufficient answer to this assignment of error, that none of the parties by their pleadings or otherwise asked such a reference; and that no such facts appear upon the record as could have made it the duty of the court on its own motion to direct such a reference. It is not necessary or proper in an attachment suit in equity, to direct an enquiry whether the rents and profits of the real estate attached will pay the debt within a reasonable time.

For the foregoing reasons the decree of December 18, 1876, and that of the 28th day of May, 1878, must be affirmed with costs and damages according to law.

JUDGES GREEN AND HAYMOND CONCURRED.

DECREES AFFIRMED.