# CHARLESTON.

FARLAND v. WOOD, et als.

Submitted June 12, 1891.—Decided November 14, 1891.

1. INJUNCTION.

A bill of injunction should contain a distinct averment of irreparable injury, and the facts must appear on which the allegation is predicated, in order that the court may be satisfied as to the nature of the injury.

2. INJUNCTION—INSOLVENCY.

In general, the insolvency of a creditor who is pressing the foreclosure or enforcement of a lien, and against whom offsets are claimed by the debtor, constitutes good ground for an injunction; but when this is the only ground for equitable interference, and the plaintiff fails to prove the insolvency, the injunction should be dissolved.

3. PROMISSORY NOTES—PURCHASE-MONEY—DEED OF TRUST.

A party who has purchased property under a contract, and given his notes for the purchase-money, and deliberately executed a deed of trust to secure them, will not be readily entertained in a court of chancery when he seeks to escape their entire obligation by setting up counter claims arising out of the same contract, which existed when he executed the notes and deed of trust, and about which he was then silent.

*J. J. Davis* for appellant, cited 31 Pa. St. 396; Ed'wd Ch'y 213; 9 Paige 323; 9 Sup. C't Rep. 504; 24 Gratt. 279; 30 W. Va. 561; 11 Gratt. 499.

*E. Maxwell* for appellee.

LUCAS, PRESIDENT:

This was a suit in chancery brought in the Circuit Court of Harrison county, by Joseph T. Farland, plaintiff, against Frederick W. Wood, Henry J. Caswell, and Walter C. Newberry, and John Bassel, trustee.

The bill alleges and exhibits a contract between the plaintiff and the defendants Wood and Caswell, with reference to a coking business, whereby coke was to be manufactured and shipped from the property of the plain-

tift by the said defendants. By the terms of this contract the said defendants purchased of the plaintiff ten coking ovens, on plaintiff's mining property in Harrison county, for which they agreed to pay him three thousand eight hundred and forty five dollars, and further agreed to construct ten more ovens on the same property, together with a chute *etc.* They further bound themselves to commence work on the ten additional ovens within ten days after the execution of the contract, "and as soon as they are satisfied that the business will prove profitable, they agree to construct eighty additional ovens for coking as soon as possible." The plaintiff on his part, agreed to furnish the ground to carry on the business and operate the ovens for the period of ten years free of rent or charge, and to furnish coal during said period as therein stated. Thence the contract proceeded to name the price at which the coal was to be sold by the plaintiff to the defendants.

It was further agreed that if said defendants, who were the contractors of the first part, should not wish to continue in the coke business and should desire to dispose of their ovens constructed and to be constructed, the plaintiff, who was the contractor of the second part, agreed to purchase said ovens together with all fixtures and all personal property appurtenant thereto, paying therefor the cost price including the aforesaid sum of three thousand four hundred and eighty five dollars within twelve months after notice of the desire of the parties of the first part to dispose of said property, said purchase-money to draw six *per cent.* interest, and to be secured by a satisfactory mortgage on all the mining property owned by the plaintiff in Harrison county, including machinery *etc.*, said mortgage to include release of dower by plaintiff's wife, and to be a conveyance in fee and first lien on said property, " aside from one mortgage now existing for purchase-money."

Other provisions were contained in the contract, as to which no controversy has arisen and which may be here omitted. Then comes the following provision : " It is further agreed and understood that said party of the second part shall as agent of the said parties of the first part, superintend the construction of said coke ovens and attend to the

management of said coke business and the manufacture, handling, and shipping of coke during the pleasure of both parties, and with the right of either party to terminate said agency at any time; and said parties of the first part agree to give the party of the second part in lieu of all other compensation for his service as such agent during the existence of such agency one third of the net profits of said coke business, and this agency shall in no matter operate as a partnership."

It was further provided that the plaintiff should keep said ovens at all times supplied with coal at the agreed price, except in case of a strike or accident over which he had no control, " and the said parties of the first part further agree to keep the ovens burning and coking and to take coal from party of the second part, except in case of strike, or when the price of coke is so low as to render the manufacture of coke unprofitable, or in case of an accident over which parties of the first part have no control."

These are the only provisions of this contract which have become important in view of the present controversy.

The bill alleged that the plaintiff had purchased their coking ovens of Wood & Caswell, the defendants, in pursuance of the terms of the contract together with the fixtures affixed thereto, on the 9th day of October, 1884, for the sum of seven thousand three hundred dollars, payable in five equal annual installments, with interest from date payable annually; and in order to secure said purchasemoney, the plaintiff and his wife executed a deed of trust to John Bassel as trustee, upon a certain tract or parcel of land in Harrison county. The bill then proceeds to charge that there has never been any settlement or adjustment of accounts between the plaintiff and said Wood & Caswell; that they had never paid him for his services as agent; that they have violated their contract in sundry particulars, greatly to his damage, and have never made or offered him any compensation therefor; that they are non-residents of this State and own no property, real or personal therein except the twenty coke ovens aforesaid, and that they are as plaintiff is informed insolvent.

The bill further alleges that notwithstanding these short-comings and derelictions and violation of contract on the part of defendants Wood & Caswell, they are about to proceed to enforce the deed of trust against the plaintiff's property, and he prays therefore that they and the trustee may be enjoined from executing the said trust, or enforcing the payment of the several notes aforesaid, until the matters contained in the bill can be enquired of and determined.

The defendants Wood & Caswell entered a demurrer to the bill which was overruled, and they thereupon answered the bill, denying all of its material allegations; and a considerable amount of testimony was taken on both sides by the parties interested. On the 25th day of January, 1890, the Circuit Court entered a final decree dissolving the injunction and dismissing the bill, and from that decree this appeal has been taken.

A bill of injunction should contain an averment of *irreparable damage.* It has been frequently held that in order to maintain such a bill the averment of irreparable damage must not only be distinctly made, but it must be sustained by the proof. Upon this subject Mr. High says, "Thus it is well established that the mere allegation of irreparable injury will not suffice to warrant an injunction, but the facts must appear on which the allegation is predicated, in order that the court may be satisfied as to the nature of the injury. Nor, will mere argumentative allegations or inferences from the facts stated suffice to meet the requirements of the rule."

Again: "The relief will not ordinarily be allowed where the facts upon which complainant's equity rests are stated only upon information and belief, but they should be made to appear by positive averments founded on complainant's own knowledge, or that of some person cognizant of the facts. Nor, will it suffice that the averments of the bill are made upon the information of the party complaining without stating his source of information." High on Injunc. § 34 and 35; 1st Barton Chan. Prac. page 430; Story's Eq. Jur. § 921; *Hale* v. *P. P. & O. R. Railway* 23 W. Va. 454.

In the present case the bill contains no such express aver-

ment, and the only circumstance from which irreparable injury could be inferred is the alleged *insolvency* of the defendants Wood & Caswell.

In many cases the insolvency of a creditor against whom offsets are claimed while he is pressing the foreclosure, or enforcement of a lien, has been considered a good ground for the interposition of equity by injunction. But, as I have said, where a plaintiff fails to prove the insolvency, the injunction must be dissolved. *McClellan* v. *Kinnaird*, 6 Gratt. 352; *Meem* v. *Rucker*, 10 Gratt. 506; High on Inj. § 243; *Lindsay* v. *Jackson*, 2 Paige 582; *McMillen* v. *Ferrell*, 7 W. Va. 223; *W. M. & M. Co.* v. *The V. C. C. Co.*, 10 W. Va. 250.

In the present case, the allegation of insolvency does not meet the requirement of the rule that we have quoted from Mr. High. It is charged in the bill "that as the plaintiff is further informed, believes and so charges the said Wood & Caswell, *one or both* of them are insolvent." In another place it is alleged that "the said Wood & Caswell are non-residents of this State, and as he *believes* are insolvent."

When we come to the evidence, there is absolutely no sufficient evidence to prove insolvency, and the court below accordingly so found, and properly dissolved the injunction.

With reference to the sets-off themselves, in the view we have taken, it is not necessary to discuss them.

Regarding them simply as grounds for an injunction we may, from that point of view, observe that they do not commend themselves to a court of chancery. The defendants, Wood & Caswell, testify that there was a *settlement* at the time of the execution of the deed of trust; that five hundred dollars was abated by Mr. Wood from the purchase-money as fixed by the original contract, and that the plaintiff did not at that time make any claim on account of said offset. Indeed, the very nature of the transaction would seem to sustain this view, for would it not be absurd to suppose that a man in good faith would deliberately execute notes and give a deed of trust on his farm to secure them, when at that very time he proposed to escape their obligation by setting up counter claims to the full value of the notes?

. A party who has given his notes for property purchased under a contract, and deliberately executed a deed of trust to secure them, will not be readily entertained in a court of chancery when he seeks to escape their entire obligation by setting up counter claims, arising out of the same contract, which existed when he executed the notes and deed of trust, and about which he was then silent. A court of chancery will not look with favor on such a transaction nor will it ordinarily lend its aid to a plaintiff who has placed himself in this situation, but will leave him to such remedies as a court of law will afford. The question as to whether a virtual settlement of prior transactions was intended when the notes were executed is a question of *fact* which the lower court has evidently determined in favor of the defendants, and we are not disposed to interfere with that decision. *Varner* v. *Core*, 20 W. Va. 472.

For these reasons the decree complained of must be affirmed.

AFFIRMED.