# John G. Shortall

## *v.*

# Alexander Mitchell *et al.*

1. Specific performance—*laches on the part of the purchaser—whether excusable.* In a suit for the specific performance of a contract for the sale of land, on which no money had been paid, brought by the purchaser against the vendor, it was *held*, the purchaser could not be excused for the failure on his part to pay the purchase money when due, on the ground there was an apparent lien on the premises, for a sum of money in favor of a third person, having, before he claimed to have any knowledge of the existence of such lien, and after the purchase money was due, lost the right to ask a court of chancery for a decree of specific performance, by showing himself either unable or unwilling to perform his part of the contract.

2. Though, had the vendor brought suit against the purchaser, the apparent lien, upon the record, might be of some importance.

Writ of Error to the Superior Court of Chicago ; the Hon. John A. Jameson, Judge, presiding.

The opinion states the case.

Mr. John Borden, for the plaintiff in error.

Messrs. Hitchcock, Dupee & Everts, for the defendants in error.

Mr. Chief Justice Lawrence delivered the opinion of the Court :

This was a bill for specific performance, brought by Shortall, against Alexander and James Mitchell, upon the following memorandum :

" Chicago, Ill., Dec. 4th, 1867.   I have this day sold to John G. Shortall, my lot on south-west corner of Prairie avenue

11—57th Ill.

and Sixteenth street, (about 92 feet x 177 feet,) for $20,000, payable as follows :

$2,000 cash, receipt acknowledged ;

$8,000, on or before 5th January, 1868 ;

$5,000, on or before 1st January, 1869 ;

$5,000, on or before 1st January, 1870; the last two payments to bear interest at the rate of eight (8) per cent per annum, from 1st July, 1868, payable semi-annually.

Witness my hand and seal.

ALEX. MITCHELL,<br>·Per JAMES MITCHELL.     (SEAL.)

Possession to be given of said premises, on or before 1st April, 1868.

" J. G. SHORTALL. "

On the hearing, the court dismissed the bill. We are of opinion there was no error in this decree. We can briefly state the grounds of our opinion, without recapitulating all the facts or going over all the correspondence contained in the record.

It should be first remarked, that no part of the two thousand dollars mentioned in the memorandum as a cash payment, was in fact paid. This item was specified merely for the purpose of making the nominal price of the property twenty thousand dollars, · while it was, in fact, but eighteen thousand. The appellant therefore, can not complain of hardship, or appeal to the conscience of the court, on the ground that he has parted with his money. He has paid none, and must rest solely on his contract.

By that contract, he was to make his first payment on or before the 5th of January, 1868. The time was extended until the 16th of January, 1868, when he was to be ready to pay in full. Alexander Mitchell, who lived in Montreal, and who held the legal title to the property, as security for a large sum of money, had come to Chicago, and was waiting to have the matter closed. Instead, however, of meeting this engagement, the complainant left Chicago for New York, on the 11th of

January, and did not return until the 18th or 19th of the same month, at which time, both Alexander and James Mitchell, had left Chicago, the former for Montreal, the latter for Scotland. They were still willing, however, to close the sale, and for that purpose had left with their brother, George Mitchell, the requisite deeds. He saw complainant soon after his return, and informed him he had the deeds ready for delivery, but the latter was not prepared to pay. On the 23d of January, complainant wrote to James Mitchell, expressing his disappointment in not having been able to pay, saying that money was scarce, and he could not negotiate his paper without making more of a sacrifice than he was willing to submit to, and making a new proposition to pay part down, and the residue in two, three and four years. On the 28th of January, he had another interview with George Mitchell, claiming to be ready to pay, but for a lien which he had discovered on the property, in the form of a decree for alimony, at $500 per annum, payable to the wife of James Mitchell. He gave this as a reason for not paying. On the 31st of January, Alexander wrote to George Mitchell, to let the matter drop if Shortall had not paid. James Mitchell returned to Chicago in April, and the complainant then made a formal tender of the money, and demanded a deed, which was refused.

From this statement of the main facts, it is apparent Shortall is not entitled to a decree for specific performance. The object of the defendants in making the sale, was to raise immediately a considerable sum of money. For that purpose, the first payment, which was to have been made on the 5th, was extended by agreement, to the 16th, and the entire purchase money was then to be paid. But Shortall not only did not pay at that time, but admitted to George Mitchell his inability to do so, and on the 24th, wrote to Alexander the letter above described, in which he virtually repudiated the contract. In view of these facts, we are at a loss to understand on what ground he can claim the court should compel these defendants to make him a deed. He has paid them nothing.

He has disappointed them by failing to pay when he promised, although they were anxious to complete the contract. Even if he was ready to pay on the 28th, but for the decree for alimony, it was then too late to make that offer the basis of relief, for he had already virtually repudiated the contract, not on the ground of the decree, but because he could not make the payment. The alimony had, however, been satisfied in another manner, and in view of the entire correspondence, we are inclined to the opinion that Shortall was aware of that fact, and that the talk about the alimony on the 28th, was for the purpose of gaining further time. But whether so or not is immaterial, as he had already admitted his inability to pay, and had proposed a new contract. If the defendants had brought suit against him, the apparent lien upon the record might be of some importance. When, however, he is seeking the aid of the court, he can not excuse his non-payment on the 16th, or his letter of the 24th, by alleging that on the 28th he, for the first time, discovered there was an apparent lien, though there was none in fact. Before he claims to have had any knowledge of this apparent lien, he had lost the right to ask a court of chancery for a decree of specific performance, by showing himself either unable or unwilling to perform his part of the contract.

*Decree affirmed.*