# CHARLESTON.

### CLAY, et al. v. DESKINS, et al.

Submitted January 21, 1892.—Decided April 2, 1892.

1. SPECIFIC PERFORMANCE—LACHES.

A party seeking specific performance by a bill in equity must show himself to have been ready, desirous, prompt and eager to perform the contract on his own part. The unreasonable delay of the purchaser, which will preclude a decree for specific performance in his behalf, is dependent upon the circumstances of the particular case, and, if his conduct has indicated bad faith or a virtual abandonment of the contract, it will deprive him of all just claim to equitable interposition.

2. BURDEN OF PROOF—FRAUD.

The rule of law is that he who alleges fraud must prove it.

3. SPECIFIC PERFORMANCE—LACHES.

Where in a bill for specific performance the complainants nowhere aver either their ability or willingness to pay promptly and at once their purchase-money, which has long been overdue, and where there is no evidence in the cause tending to prove either their ability or inclination to make such payment, the relief prayed for ought not to be granted.

*H. K. Shumate* and *Watts & Ashby* for appellant cited 19 How. 113; 17 Wall. 78, 80; 16 How. Pr. R. 325–327; 12 Fed. Rep. 641; 26 How. Pr. R. 167; 8 Paige 349; Ror. Jud. Sales §§ 113, 115, 576; 36 Ill. 319; 14 O. St. 349, 350; 31 W. Va. 358; 2 Harr. & G. 354; 9 Wall. 23; 23 W. Va. 625.

*Vinson & McDonald* (*J. S. Marcum*, of counsel) for appellees cited 27 W. Va. 452; 1 W. Va. 219; 12 W. Va. 512; 17 W. Va. 717; 19 W. Va. 78; 22 W. Va. 595; 20 W. Va. 617; 28 W. Va. 16; 14 W. Va. 321; 10 W. Va. 264; 15 W. Va. 56; 21 W. Va. 685; 32 W. Va. 418; Id. 209.

LUCAS, PRESIDENT:

On the 5th day of February, 1886, Patton Bros. instituted a suit in chancery in the Circuit Court of Logan county to enforce a judgment against L. S. Deskins, who with others

was made a defendant. At the October term, 1886, a decree was entered directing a large tract of land comprising five thousand one hundred and eighty five acres, to be sold by a special commissioner. At the subsequent October term, 1888, Sheppard and Shumate were appointed special commissioners in lieu of the former commissioner with power in either one to act as such commissioner, and they were directed to carry out the decree of sale. In the mean time, while the suit was pending, on the 25th day of May, 1888, the plaintiffs in the present suit, Samuel Clay, Jr., and George W. Headley, entered into a contract with the defendant, L. S. Deskins, and others for the purchase of five thousand one hundred and eighty five acres, being the land decreed to be sold in said cause, at the price of three dollars per acre, of which two hundred and thirty dollars was paid in hand, and the remainder was to be paid within ten months from the date of the contract. It was also understood that Clay & Headley were to have the land surveyed at once. This executory contract was not signed by Clay & Headley, but was signed and sealed by L. S. Deskins and by William Blackham and wife, who seemed to have some interest in the property.

In pursuance of the decree of sale rendered in the cause of *Patton Bros.* v. *L. S. Deskins, et al.*, Shumate, as special commissioner, advertised a tract of five thousand one hundred acres belonging to L. S. Deskins to be sold at public outcry on the 1st day of April, 1889. The land was accordingly sold to one W. H. Deskins, son of L. S. Deskins, at the price of ten thousand dollars; but the commissioner, upon being advised that an upset bid would be filed, advised the purchaser that he could not recommend a confirmation unless said purchaser would authorize him to raise the bid to fifteen thousand dollars, which was done accordingly, and the sale was confirmed to W. H. Deskins at that price. The purchaser complied with all the terms of the sale by paying enough in hand on the day of sale to satisfy all costs of suit, and executing two bonds with approved security bearing interest from the day of sale for the deferred instalments of purchase-money.

Some thirteen days afterwards, on the 15th day of April,

1889, the purchaser, W. H. Deskins, united with L. S. Deskins and wife, and William Blackham and wife, in a contract with Stuart Wood, by which they sold real estate amounting to five thousand, one hundred and eighty five acres, also an additional tract of one hundred and fifty to two hundred acres, the larger tract at the price of four dollars per acre. This larger tract was the same which the commissioner had sold to said W. H. Deskins. Stuart Wood paid one thousand dollars in cash, and was to pay the remainder upon the delivery to him of an approved deed. It appears that with this one thousand dollars all the liens upon the larger tract were paid off and satisfied.

At the july term following, 1889, of said Circuit Court, Clay & Headley filed their bill in chancery against W. H. Deskins, L. S. Deskins, Shumate and Sheppard, commissioners, William Blackham, and Stuart Wood, in which the plaintiffs charge a conspiracy on the part of the defendants to defraud the plaintiffs of the purchase-money, two hundred and thirty dollars, which they had paid on said lands ; and they prayed that the sale made by the special commissioner Shumate to W. H. Deskins be annulled and set aside ; and that the defendants L. S. Deskins and William Blackham, upon the payment of the balance due them upon the contract of May 25, 1888, be compelled to make conveyance of said lands to the plaintiffs, according to the terms of said contract; that the commissioner Shumate be enjoined and prohibited from making a deed of conveyance of said lands to W. H. Deskins or to Stuart Wood, or to any other person, until the termination of this suit; and that W. H. Deskins be restrained and inhibited from paying the commissioner any further purchase-money ; and that Stuart Wood be enjoined from paying to W. H. Deskins any of the purchase-money for said lands, until the further order of the court.

The several defendants filed demurrers to the plaintiffs' bill, and the plaintiffs joined, but there is no formal entry of any action of the court upon these demurrers, nor are they mentioned in the final decree. Answers were then filed, with general replications thereto, and numerous depositions were taken by the respective parties.

On the 19th day of October, a final decree was entered by which the Circuit Court set aside the order of the 2d of April, 1889, which confirmed the sale to W. H. Deskins, and set aside and declared null and void, the sale itself, and decreed that the plaintiffs should recover from the defendants their costs. This decree closes as follows: "And the purposes of this cause having been fully accomplished, the same is ordered to be stricken from the docket." Thus, in this final decree, no notice whatever is taken of the prayer for specific performance, and none of the restraining orders asked for in the bill appear to have been granted or effectuated.

From this decree the defendants below have appealed to this Court.

As the court below seems not to have acted upon the demurrers formally, and as we shall place our decision upon the broad merits of the case and the equities between the parties, I shall omit to discuss further the points raised by counsel on the demurrers to the bill.

This is a bill for specific performance, and, it will be unnecessary to discuss the regularity of the sale by the special commissioner, Shumate, to W. H. Deskins, since that question and all incidental questions connected therewith are matters in which the plaintiffs can have no interest, unless they are themselves entitled to specific performance of their contract. Are they so entitled?

In order to answer this question, the court will consider all the facts and circumstances as disclosed by the record and evidence. These plaintiffs were *pendente lite* purchasers and are presumed to have had knowledge of the pendency of the suit, and that the very lands they were then contracting for, the court had ordered to be sold. If ever there were a case where time was of the essence of the contract, such, surely, was the character of this sale by a debtor whose lands were then resting under a decree of court to be sold at public outcry for whatever they might bring, to satisfy the liens existing against them. The stipulation of the contract was that the purchasers should have the land surveyed at once, and should pay the full purchase-money within ten months from the date of

the agreement, which bore date the 25th day of May, 1888. The time of payment, therefore, expired on the 25th day of March, 1889. The lands were advertised on the 6th day of March, 1889, to be sold on the 1st of April following at public auction, and this advertisement was inserted for four successive weeks, expiring a few days before the day appointed for sale.

Now, if these complainants were acting with that diligence and good faith which should characterize those who seek specific performance from a court of equity, why did they permit this land to be set up at auction, when by compliance with the terms of their own contract and by the payment of the money then overdue they could have lifted all liens, and relieved the land and prevented the danger of a sacrifice?

Instead of acting thus, with diligence and good faith, they not only permit this land to be set up at public auction, but boldly avow their intention to bid upon the land themselves, and are here now complaining that their purpose in that respect was frustrated. Now, the avowal and entertainment of such an intention on their part are of themselves badges of fraud, for why should they desire to bid on these lands which they had already purchased at a price beyond fifteen thousand dollars, if it were not that they proposed to get them, if possible, at a less price at public outcry?

Moreover, as if to close against themselves every avenue of escape from the charge of bad faith, they avow in their bill that they had engaged C. W. Brockunier, a capitalist from Wheeling, to come to Logan court-house to bid upon these lands in their interest, and that said Brockunier actually informed the special commissioner, after the lands were knocked off at ten thousand dollars to W. H. Deskins, that he, Brockunier, acting on behalf of plaintiffs, was going to put in an upset bid at fifteen thousand dollars. Now, why should these parties desire to make a bid of fifteen thousand dollars on lands for which they had already bound themselves to pay fifteen thousand five hundred and fifty five dollars, which sum was then already overdue, and which, if they were acting with good faith and diligence,

they should already have paid into court, or, at least, enough thereof to have prevented a public sale of these lands?

The principles which govern courts of equity in granting specific performance have been frequently defined by this Court, and the courts of appeals of Virginia. *Richardson* v. *Baker*, 5 Call 514; *Bowles* v. *Woodson*, 6 Gratt. 78; *Hale* v. *Wilkinson*, 21 Gratt. 90.

The general principle which we find particularly applicable to this case is laid down by Mr. Waterman, as follows: "Laches of the vendee, depriving him of the right to insist upon the contract of sale, may consist simply in neglecting to make his payments, or to fulfill some other essential condition, or in not only failing for a long period to fulfill on his part, but by lying by and seeing the property sold to a third person, or in neglecting to file a bill to enforce the contract against the vendor. The usual maxim is that a party seeking specific performance must show himself ready, desirous, prompt, and eager to perform the contract. Where, in a contract for the conveyance of land, no time is fixed for the payment and delivery of the deed, payment must be made in a reasonable time or on request. The delay of the purchaser without excuse, which will preclude a decree for specific performance in his behalf, may, as we have seen, be measured by years or months, according to the circumstances of the particular case. But be the time long or short, when it indicates a virtual abandonment of the contract on his part, it will deprive him of all just claim to equitable interposition." ' Wat. Spec. Perf. § 475; *Ives* v. *Armstrong*, 5 R. I. 567; *Shortall* v. *Mitchell*, 57 Ill. 161.

The plaintiffs in this case do not seem to have shown either good faith or diligence, and they were not entitled to specific performance. So far as they were concerned, therefore, it makes not the slightest difference whether the sale to W. H. Deskins was regular or otherwise.

The bill, however, charges a deliberate conspiracy on the part of Commissioner Shumate and L. S. Deskins, W. H. Deskins, and Stuart Wood to defraud the plaintiffs out of the purchase-money (two hundred and thirty dollars) which they had paid on the land. With reference to this charge

a great deal of evidence was taken on both sides. The rule of law is that he who alleges fraud must prove it. It is sufficient to say that under no possible view of the evidence in this case have the plaintiffs met the burden which devolved upon them in this respect. In justice to Mr. Shumate, we are compelled to say that the record does not disclose a single act or declaration of his inconsistent with his duty to the court as a special commissioner, or in violation of his obligations as a member of the bar. As for the purchaser, Stuart Wood, not even the slightest attempt is made in the depositions of the plaintiffs to bring home to him either knowledge or participation in any conspiracy, fraud, or unfairness. He has already paid one thousand dollars on his purchase, and the decree below makes no provision whatever for its return to him. Moreover, the complainants nowhere aver either their ability or willingness to pay promptly and at once their purchase-money, nor is there any evidence in the cause tending to prove either their ability or inclination to make such payment. This, of itself, would be a fatal defect and an insuperable obstacle to granting them any relief. Wat. Spec. Perf. § 443.

The decree below must be reversed, and the bill of complaint dismissed.

REVERSED. BILL DISMISSED.