# CHARLESTON.

## HARRISON *v.* HARRISON *et al.*

Submitted January 22, 1892.—Decided April 16, 1892.

1. SPECIFIC PERFORMANCE—LACHES—PAROL GIFT—PART PER-
   FORMANCE—IMPROVEMENTS—BURDEN OF PROOF.

   The first point in the syllabus of *Clay* v. *Deskins supra* p. 350 (5 S. E. Rep. 85) is approved and reaffirmed, as follows : "A party seeking specific performance by a bill in equity must show himself to have been ready, desirous, prompt and eager to perform the contract on his own part. The unreasonable delay of the purchaser, which will preclude a decree for specific performance in his behalf, is dependent upon the circumstances of the particular case ; and, if his conduct has indicated bad faith or a virtual abandonment of the contract, it will deprive him of all just claim to equitable interposition." Where the plaintiff claims under a parol gift of land, this principle will be still more strictly applied.

2. SPECIFIC PERFORMANCE—IMPROVEMENTS.

   A parol promise to give land to another, accompanied by actual delivery of possession, will be specifically enforced where the promisee induced by such promise has paid the taxes and made valuable improvements with the knowledge of the promisor. But, on the other hand, to sustain a parol gift of land as against the heirs of the donor, there must be clearly shown an executed intent to make the gift, possession taken, taxes paid and improvements made on the faith of such intent.

3. GIFT—PARENT AND CHILD—EVIDENCE.

   Where a son goes into possession of his father's land, and makes inexpensive improvements, it is not to be inferred therefrom, in the absence of other evidence, that the father gave the son the land. Neither are loose declarations of the father, without explanation, sufficient evidence of a gift. A contract between a parent and child, from the nature of the relation, requires to be proved by a kind of evidence much stronger than that which might suffice between strangers. The evidence, in case of a parol gift from father to child, should be direct, positive, express and unambiguous, and its terms clearly defined.

4. SPECIFIC PERFORMANCE—GIFT.

   If the conduct of the plaintiff has indicated bad faith, or a

virtual abandoment of the contract, or a cancellation of the parol gift for a valuable consideration, these circumstances will deprive him of all just claim to equitable interposition.

5. SPECIFIC PERFORMANCE.

The court will look at all the circumstances of the case, and will not decree specific performance unless those circumstances render such a decree just and equitable. The plaintiff has the laboring oar, and the defendants are at liberty to prove any circumstances which tend to show the weakness of his cause and the want of equity in his demand; especially in a case like the present, where, by their answer, defendants had given full notice of the facts upon which they meant to rely in their defence.

*J. W. Hale* and *D. E. Johnston* for appellant cited 25 W. Va. 471; 22 Gratt. 573; 7 Cow. 48; 8 Paige 473; 28 W. Va. 58; Fry Spec. Per. (3d Am. Ed.) 530; 9 Gratt. 1; 19 W. Va. 168.

*Watts & Ashby* and *Chapman & Gillespie* for appellees cited 3 Pom. Eq. Juris. §§ 1293, 1405; Id. §§ 392, 393, 398, 400; Ad. Eq. s. p. 78; 2 W. & T. Leas. Cas. Eq. 920, 955; Id. 1024; Id. 654; Fry. Spec. Per. 405 (s. p. 305); Code, c. 79, s. 1.

*D. E. Johnston* for appellees, Newberry *et al.* cited 17 N. J. Eq. 525; 22 Gratt. 370; 20 W. Va. 415; Pom. Eq. Juris. § 1405 n. 3; 9 N. J. Eq. 332; 10 W. Va. 706; 6 Gratt. 78; 10 Mo. 736; 1 Sto. Eq. Juris. § 750; 34 Am Dec. 474; 58 Am. Dec. 136; 34 Am. Dec. 474.

LUCAS, PRESIDENT:

This was an appeal from a decree rendered by the Circuit Court of McDowell county on the 8th day of July, 1891, in a chancery cause then and there pending, wherein William T. Harrison was plaintiff, and Elizabeth Harrison and others were defendants. The object of the suit was to enforce the specific execution of a parol exchange of lands situate in McDowell county between the plaintiff, William T. Harrisson, and his father, the late Henry Harrison, by which the plaintiff claimed to have exchanged the Brewster lands with his father for the undivided half of the Mountain Fork lands. Said suit also had for its object the procuring of the legal title to said tract of land from the defendant D. G. Sayers and the heirs of the said Henry Harrison.

It is averred in the bill or petition that in April, 1882, the petitioner was the equitable owner of three tracts and parcels of land situate on Dry Fork, in McDowell county, W. Va., lying contiguous to each other, and composing what was known as the "Brewster Lands," the legal title to which was in Henry Harrison, petitioner's father, and that petitioner resided upon same ; that at the same time the said Henry Harrison was the equitable owner of one undivided moiety of a tract of land situate in said county, on the Mountain Fork of Big creek, the other moiety being owned by the defendant D. G. Sayers, the legal title to the whole of said tract being in the said Sayers ; that the said Mountain Fork tract was wild and uncultivated land and had no improvements of any kind upon it ; that on the —— day of April, 1882, petitioner made a parol exchange of the said Brewster lands with his father, the said Henry Harrison, for the latter's moiety of the Mountain Fork land, receiving from his father the sum of four hundred dollars in cattle as a difference in the estimated and agreed values of said land ; that the said Henry Harrison took immediate possession of the Brewster lands, and sold them to other parties ; that petitioner took possession of the Mountain Fork lands in conjunction with the said D. G. Sayers, put tenants on it, cleared a large part of it, fenced it, built a dwelling house upon it, etc., and has remained in actual possession until this time, and is now in possession of it ; that Henry Harrison died in 1887, intestate; and that the legal title to the whole Mountain Fork tract is still in D. G. Sayers. D. G. Sayers, Henry Harrison's heirs at law, and others, who claim as alienees from some of the said Henry Harrison's heirs, are made parties defendant to the bill.

A part of the adult heirs answer denying the exchange as set up in the bill, and alleging that, even if the exchange was made as charged in the bill, the petitioner subsequently resold the Mountain Fork land to the said Henry Harrison in his lifetime. To this answer there is a general replication. The infant defendants answered by their guardian ad litem. The defendant D. G. Sayers answered, and admitted all the charges in the bill against him. Depositions were taken, and on the 8th day of July, 1891, the case was

heard by the Circuit Court of McDowell county, and the bill dismissed. There had been sales of their interests by several of the heirs of Henry Harrison, and their alienees were made parties.

It further appears that a suit between the heirs of Henry Harrison for the partition of the Mountain Fork land was instituted in the said Circuit Court, to which Sayers was a party, as was also the plaintiff, W. T. Harrison; and that in said suit the land was partitioned, not only as between Sayers and the heirs of Henry Harrison (Sayers taking one moiety, and said heirs the other) but that they also effected a partition of the moiety of said tract of land among the heirs themselves. The record does not sufficiently show that the latter subdivision between the heirs themselves had ever been completed and recorded as prescribed by chapter 117, sec. 8, Code.

In the case of *Clay* v. *Deskins, supra,* p. 350 (15 S. E. Rep. 85) it was held: "A party seeking specific performance by a bill in equity must show himself to have been ready, desirous, prompt, and eager to perform the contract on his own part. The unreasonable delay of the purchaser which will preclude a decree for specific performance in his behalf is dependent upon the circumstances of the particular case, and if his conduct has indicated bad faith, or a virtual abandonment of the contract, it will deprive him of all just claim to equitable interposition."

The principle thus announced was applied to a party who held a written agreement for a valuable consideration, a part of which had been paid. How much stronger would be the application of the principle to a case like the present, in which the object of the bill is to enforce a parol gift of land for a consideration not valuable in law, but, only that of natural love and affection?

Whether a court of chancery will in any case enforce an unexecuted gift on no valuable consideration is doubtful, and the elementary writers upon this subject are not entirely in accord. For example, Mr. Fry lays the principle down thus broadly (page 71, Spec. Perf.): "It must be observed that the court will never lend its assistance to enforce the specific execution of contracts which are volun-

tary, or where no consideration emanates from the party seeking performance, even though they may have the legal consideration of a seal; and this principle applies whether the contract insisted on be in the form of an agreement, a covenant, or a settlement." For this position he cites *Groves* v. *Groves*, 3 You. & J. 163; *Houghton* v. *Lees*, 1 Jur. (N. S.) 862; *Ord* v. *Johnson*, Id. 1063; also *Jeffries* v. *Jeffries*, Craig & P. 138; *Harvey* v. *Audland*, 14 Sim. 531; Madd. Ch. Pr. 413.

On the other hand, the American doctrine is thus laid down by Mr. Waterman on Specific Performance, p. 249, § 187: "A gift of real estate will be enforced with great caution, and not in general, unless the donee has taken possession and made improvements on the faith of the gift. When he does this, it constitutes a valuable consideration on which to ground a claim for specific performance." For this he cites several American cases. See *Guynn* v. *McCauley*, 32 Ark. 97. Further on in his work Mr. Waterman discusses the subject at large in a very satisfactory way. See section 271 *et seq.* and sections 284, 285, *et seq.*·

From this discussion, and authorities cited we deduce the principle that a parol promise to give land to another if accompanied by actual delivery of possession, will be specifically enforced, where the promisee induced by such promise has made valuable improvements with the knowledge of the promisor. But, on the other hand, to sustain a parol gift of land as against the heirs of the donor, there must be clearly shown an executed intent to make the gift, possession taken, and valuable improvements made on the faith of it.

Where a son goes into possession of his father's land, makes improvements, and pays the taxes, it is not to be inferred therefrom, in the absence of other evidence, that the father gave the son the land. Neither are loose declarations of the father calling the land the son's property, without explanation, sufficient evidence of a gift. A contract between a parent and child, from the nature of the relation, requires to be proved by a kind of evidence very different from that which might be sufficient between strangers. The evidence in such case of a parol gift from father to child

should be direct, positive, express and unambiguous; and its terms should be clearly defined.

If, however, large expenditures have been made by the son in permanent improvements on the land with the knowledge of the father and in consideration of his promise to convey the land, and the son has paid the taxes, the contract will be specifically enforced. In such cases, the court relies not so much on the contract as upon the acts and expenditures done and made, on the faith that the promise will be kept by the other party. *Lorentz* v. *Lorentz's Ex'r*, 14 W. Va. 761 ; *Rowton* v. *Rowton*, 1 Hen. & M. 92 ; *Jones* v. *Tyler*, 6 Mich. 364 ; *Ferry* v. *Stephens*, 66 N. Y. 321 ; *Freeman* v. *Freeman*, 43 N. Y. 34 ; *Johnston* v. *Johnston*, 19 Iowa 74 ; *Young* v. *Glendenning*, 6 Watts 509.

Applying these principles to the present case, while there is the evidence of two witnesses, one the uncle and the other the brother of the complainant, tending to establish the fact that the lands known as the "Brewster Lands" were given to the complainant by his father by parol, and the donee placed in possession, and these Brewster lands were then exchanged for the father's interest in the Mountain Fork tract, yet, upon the other hand, the son paid no taxes, so far as the evidence shows, upon either tract, until after the father's death. His expenditures in improvements were very inconsiderable, and his possession of the Mountain Fork tract constructive only; that is to say, through a tenant or tenants engaged by him and the joint owner, Mr. Sayers. In the absence of any deed from the father, and of all writings of every character with reference to this subject, we can not regard the evidence in the cause as making out a case for specific execution of a voluntary gift, as against the heirs of a common ancestor.

But, even should we be mistaken in this position, there is the most satisfactory evidence, adduced by seven or eight witnesses, to the effect that the plaintiff abandoned and agreed to cancel the gift of the land and all of his interest therein before the death of his father for a valuable consideration, a large part of which he has received. According to the syllabus in *Clay* v. *Deskins*, if the conduct of the plaintiff has indicated bad faith or a virtual abandonment

of the contract, it will deprive him of all just claim to equitable interposition.

The evidence is that the plaintiff having received a part of the consideration, which induced him to surrender his interest, whatever it may have been, to his father, he approached the personal representatives of the latter and tried to induce them to permit him to return to them the purchase-money so received, and to give their assent to his resumption of his interest in the land itself. This proposition they very properly declined; and this conduct on the part of the plaintiff in connection with his effort to induce one of the heirs to withdraw all resistance to his claim would clearly indicate the absence of that conscious rectitude of purpose and genuine good faith which the chancellor requires before granting a decree for specific performance.

Counsel for the appellant have argued very strenuously that this virtual abandonment of the contract and virtual cancellation of the parol gift by the complainant were not circumstances of which his coheirs could avail themselves in this suit. But as we have seen, and as we held in *Clay* v. *Deskins*, the Court will look at all the circumstances of the case, and will not decree specific performance unless those circumstances render such a decree just and equitable. The plaintiff has the laboring oar, and the defendants are at liberty to prove any circumstances which show the weakness of his case, and the want of equity in his demand; more especially in a case like this, where, by their answer, they had given him full notice of the circumstances of defence upon which they meant to rely.

Upon the whole, we are satisfied that the Circuit Court took a proper view of the law and made the proper application of the evidence and reached a conclusion entirely just and equitable; and its decree must be affirmed throughout.

Affirmed.