# CHARLESTON

Buffalo Coal & Coke Company v. Vance *et al.*

Submitted January 16, 1912.   Decided October 22, 1912.

The decree below is reversed and plaintiff's bill for specific performance dismissed by the application of the following familiar equity principles:

1. Specific Performance—*Good Faith and Diligence.*

   Equity will not decree specific performance to him who has not shown himself to have been ready, desirous, prompt and eager to perform the contract on his part, or if his conduct has indicated bad faith or virtual abandonment of the contract. (p. 152).

2. Vendor and Purchaser—*Mutual Rights and Liabilities— Estoppel of Purchaser.*

   The rule that a vendee, who has obtained possession of land under an executory contract, will not be heard to deny his vendor's title, and that his purchase of an outstanding title will inure to the benefit of his vendor, does not apply, where the vendee was already in possession, claiming the land by title under a prior deed or contract, and his subsequent contract was made to perfect the title he already had, with one who had in fact no title. (p. 153).

3. Specific Performance—*Vendor and Purchaser—Nature of Remedy—Discretion of Court.*

   Specific performance is not a matter of right, but lies in the sound discretion of the court, and will not be exercised in favor of one who has slept on his rights, or the circumstances and conditions have so changed that specific performance would result in hardship. (p. 154).

Appeal from Circuit Court, Cabell County.

Bill in equity by the Buffalo Coal & Coke Company against James M. Vance and others. From a decree for plaintiff, defendants appeal.

*Reversed, and Bill Dismissed.*

*Maynard F. Stiles* and *Chafin & Bland,* for appellants.

*Campbell, Brown & Davis, Holt & Duncan,* and *Lilly & Shrewsbury,* for appellee.

MILLER. JUDGE:

Specific performance of a contract for the sale or exchange of land and landed interests is sought by the bill, and by the decree appealed from performance by both parties was decreed.

The contract sought to be enforced was made between the defendant James M. Vance and W. K. Cowden, Trustee, by Z. T. Vinson, dated October 10, 1903. The plaintiff company claims under a deed from Cowden, Trustee, and others, dated June 8, 1907. This suit was not begun until August 10, 1908. So that nearly five years elapsed between the date of the contract and the date of the suit to enforce it.

The bill offers no excuse on behalf of Cowden, Trustee, or on its own behalf, for delay in asserting his or its rights under the contract, except the general allegation, denied by the answer, that Cowden, Trustee, was at all times before he "conveyed" the land to plaintiff, and that plaintiff since then has been, ready and willing to comply with the terms of said agreement on his or its part, but that defendant Vance has refused and still refuses to perform the contract on his part. Cowden never did convey the land to Vance.

By the terms of the contract, Vance thereby agreed to convey Cowden "all the coal, oil and gas and fire clay on and under" the land on Huff's Creek, Logan County, conveyed to him by Jesse R. Irwin in 1901; also "a strip of land 60 feet in width for a right-of-way through said tract of land and all the other property owned by the said Vance on the Northwest side of Huff's Creek, and to a railroad or other road that may be built up said creek." It also provides that "The said 60 foot strip is to be designated by the said Cowden, Trustee, or some one acting for him." And that "said Vance is to have the privilege of using said right-of-way for ingress and egress for his own individual purposes." And that "In the deed conveying mineral to said Cowden, Trustee, will be contained provisions for the usual mining rights and privileges."

"In consideration for which," said contract provides, "the

said Cowden, Trustee, hereby agrees to convey to the said Vance the surface of said 200 acres, and also the surface of 50 acres in addition to the said 200 acres, which said 50 acres is to join the other lands of the said Vance, and is to be selected and located by him." That "In the deed from Cowden, Trustee, to Vance, the said Cowden will reserve the usual right-of-way, mining rights and privileges for any and all lands which he or his assigns may own or control in that vicinity." And that, "Said deeds are to be executed by both parties so soon as proper and appropriate descriptions can be procured."

And lastly that: "In the deed to be executed by Cowden, it shall be provided that Vance shall have the right to clear any of the lands conveyed to him by Cowden, and Cowden shall have the timber remaining on said land that will measure 18 inches in diameter or under inside the bark four feet from the ground, for mining purposes."

On demurrer, and in his answer and amended answer to the bill, Vance's defenses are, (1) alleged want of authority of Vinson to act for Cowden in making the contract;' (2) laches and abandonment of the contract; (3) that complainant is not the assignee of the contract; (4) uncertainty of the contract, and non-performance of conditions precedent; (5) want of mutuality; (6) want of consideration; (7) denial of relationship of vendor and vendee between Cowden, Trustee, and Vance; (8) misrepresentation or mutual mistake as to good title in Cowden; and lastly, (9) that specific performance is not matter of right but subject to the sound discretion of a court of equity.

We have carefully considered all these defenses, and the responses thereto, and the numerous authorities cited by counsel for the several propositions covering them, but if we are correct in our conclusion, as we think we are, that laches constitutes a complete defense, that defense is conclusive of the whole case, and it becomes unnecessary to deal with the other questions presented, except incidentally, for they do not fairly arise.

Pertinent to the defense of laches, the fact is conceded that at the date of the contract neither party had good title to the land or landed interests proposed to be conveyed. Vance had a deed, and possession; Cowden had nothing but a worthless deed and no possession. The true title to the 200 acres and the 50

acres was then in M. B. Mullins. But Vance was and had been for many years in possession of the 200 acres lying adjoining his home farm, at first under a lease in 1887, and thereafter under a deed made in 1901, from Jesse R. Irwin; and he never, at any time, got possession of the land from Cowden, Trustee, or from plaintiff, or from any one under whom they claimed.

Furthermore, Vance alleges and proves on the witness stand that he was induced to enter into the contract on the representation of Vinson, for Cowden, Trustee, that Cowden had good title, and that he would be able through him to perfect his own title, else he would not have entered into the contract. Vinson contradicts Vance, and urges supposed contradictory statements in Vance's testimony, in corroboration of his own evidence.

As we view the case this controverted fact is not very material. However, as Vance was and had been in possession of the land for years, it is difficult to see what advantage or benefit he got from the contract, or why he made it, unless some inducement was held out to him. Cowden's title or claim to the 50 acres, which he contracted to convey to Vance, was subject to the same infirmity as his claim to the 200 acres. As to both pieces Cowden's title was worthless. His deed to Vance would have given no strength to Vance's claim so far as we can see. Vance ascertained soon after his contract with Cowden, Trustee, when Mullins warned him against cutting the timber with threat of legal proceedings, that Mullins had the good title. He then consulted counsel and was so advised. He swears he notified Vinson of Mullins' claim and called upon him to protect him, which neither Cowden nor Vinson did. Vinson, however, denies such notice. But the fact is that Vance was obliged to protect his title and possession by purchase from Mullins, which he did, taking from Mullins a quit claim deed, dated July 26, 1904, which he put on record August 19, 1904. For this deed he paid Mullins two hundred dollars. He was never reimbursed for this outlay or any portion of it by plaintiff or Cowden. Nor did plaintiff or Cowden, Trustee, as Vance alleges in his answer and swears on the witness stand, at any time after the contract of October 10, 1903, propose to Vance to perform the contract on their part, or call upon or demand of him execution thereof.

'They had apparently abandoned the same, and Vance was never given any notice, except by the institution of this suit, that plaintiff or Cowden, Trustee, claimed any rights under the contract. The deed from Cowden to plaintiff makes no mention of the contract. It does not in terms convey any rights under it. That deed was made more than a year before the institution of this suit, and in the mean time plaintiff asserted nothing under the contract as against Vance. Vance swears that he had greatly improved his whole farm, had built houses and barns, and cleared fields; that the proposed right of way through his lands, if the contract should be enforced against him, would cause him great injury and damage, which he proves would be from fifteen hundred to twenty-five hundred dollars. What excuse does the plaintiff or Cowden offer for this unreasonable delay? Absolutely none. Silence for so long when the contract by its terms provided for prompt action by both parties, and the facts and circumstances already detailed, at least raises a presumption of abandonment. True there is no evidence in the case showing what changes in value have taken place since the date of the contract, but we may take judicial notice that the value of all mineral and timber land in this state had greatly enhanced in value within the five years intervening between the date of the contract and the date of the suit. We think we may assume from the facts established in the cause that some object of advantage to the plaintiff and disadvantage to the defendant called the plaintiff to action after nearly five years of unexplained delay.

The law of this State, and most if not all jurisdictions, is, that specific performance will not in equity be decreed at the suit of one who does not show himself to have been ready, desirous, prompt and eager to perform the contract on his part, and if his conduct has indicated bad faith or virtual abandonment of the contract, equity will deny him any relief. *Clay* v. *Deskins,* 36 W. Va. 350; *Frame* v. *Frame,* 32 W. Va. 463; *Chilhowie Iron Co.* v. *Gardiner,* 79 Va. 305; *Ford* v. *Euker,* 86 Va. 75; 14 Enc. Dig. Va. & W. Va. Rep. 939, and cases cited.

But it is argued that the above rule has little, if any, application to a case such as counsel conceive this case to be, where the

demand is exclusively equitable, fully proven by documentary evidence, and the delay has in no way operated to the prejudice ·of the defendant, and the facts and circumstances negative in- ference of intent on the ·part of plaintiff to abandon or relin- ·quish his right, a legal proposition affirmed in *Depue* v. *Miller,* 65 W. Va. 120.   Plaintiff also invokes the rule of *Plant* v. *Humphries,* 66 W. Va. 88, that "laches does not run against one ·asserting rights to ·real estate which he has had in possession during the delay in asserting those rights."   Also the rule of *Nuttall* v. *McVey,* 63 W. Va. 380, that "A purchaser in actual possession of land under an executory contract of sale will not ·be barred by laches from enforcing his right to a conveyance."

We have already indicated our opinion that the lapse of time and the facts and circumstances attending this case raise a presumption of intent to abandon the contract on the part of plaintiff; that the defendant Vance has been prejudiced by the delay, and that nothing has been shown negativing the intent by Cowden or the plaintiff to abandon their rights, and that the rule of *Depue* v. *Miller* ought not to be applied.

We do not see what application the rule in *Plant* v. *Humphries* .and *Nuttall* v. *McVey* has to plaintiff's case.  If Vance had ob- tained possession from Cowden, and was suing for specific ex- ·ecution, the rule of those cases might apply.  The case at bar is not a case of that kind, nor one where the rule of the cases relied on should be applied.  Vance did not get possession under his contract with Cowden, Trustee; nor does Cowden pretend to have had any possession under Vance.  Vance, finding that ·Cowden had no title, was obliged to purchase the land from Mullins to save his right and possession under Irwin.  It is ·contended on behalf of plaintiff and Cowden that Vance knew ·of the Mullins title when he made the contract with Cowden. 'This is based on the evidence of Vance that at that time he knew ·of the deed from Wilkinson, Special Commissioner, to Stoddard and Hall, under whom Mullins claimed; but it does not appear that Vance knew the effect of that deed, or that it invested good title in Stoddard and Hall.  He learned this after Mullins had warned him against cutting timber, and he had taken advice of ·counsel.  That he did not know the effect of the Stoddard and Hall deed, at the time of his contract with Cowden, is further

evidenced by his testimony, that when he signed the contract with Cowden he thought he would get a good title, or he would not have signed it. The record shows that there were numerous conflicting claims to this land, but that the title of Mullins under Stoddard and Hall was superior to them all, and had been adjudicated.

With like insistence upon the alleged equitable rights of plaintiff for specific execution, it is contended, that notwithstanding Cowden had no title, and Vance was obliged to protect his own claim and possession by purchase from Mullins, the relationship of vendor and vendee arising from the contract made Vance, in the purchase of the outstanding title from Mullins, trustee for Cowden, entitled Cowden to specific execution of the contract, on his refunding to Vance the purchase price of the Mullins deed. This was the theory of the decree appealed from. But this equitable rule applies only where the vendee has obtained possession from the vendor. The reason for the rule is, that it would be inequitable for a vendee to enter under his vendor, acquire possession thereby, and afterwards, without surrendering that possession, deny his vendor's title. But where the reason for the rule is not present in a given case the rule is inapplicable, and should not be enforced in equity. 29 Am. & Eng. Ency. Law 706; *Roller* v. *Effinger,* 88 Va. 641, 645, citing *Galloway* v. *Finley,* 12 Pet. 293.

The general rule that specific performance is not a matter of absolute right, but lies only in the sound discretion of the court, is invoked by appellant in this case. That such is the general rule needs no citation of authorities. Sound discretion does not require a court of equity to decree specific performance when the circumstances and conditions of things have so changed as to result in hardship. *Dyer* v. *Duffy,* 39 W. Va. 148; *Clay* v. *Deskins, supra.* The court has a right to look to all the circumstances and say whether justice and right demand specific performance. Hogg's Eq. Prin., section 396; *Abbott* v. *L'Hommedieu,* 10 W. Va. 677; *Lowther Oil Co.* v. *Miller-Sibley Oil Co.,* 53 W. Va. 501, 513.

Looking at this case in the light of all the facts and circumstances, including the long delay in asserting their rights under the contract, if any, to decree specific performance now would

be to permit Cowden, or the plaintiff under him, now that some object of advantage to them and of disadvantage and injury to appellant may have aroused them from their slumbers, would be to permit them to reap where they have not sown, and to deprive the appellant of the benefits of his diligence and enterprise in perfecting his title, and in which he has been in no way aided by his contract with Cowden.

· Our conclusion, therefore, is that the decree below should be reversed, and the plaintiff's bill dismissed, with cost to the appellant in this Court and in the circuit court in this behalf expended.

*Reversed, and Bill Dismissed.*