## CHARLESTON

WILKINSON et al. v. POLING et al.

Submitted March 10, 1914.   Decided May 19, 1914.

SPECIFIC PERFORMANCE—*Laches*—*Performance by Plaintiff.*

> Equity will not enforce performance of a contract for the sale of coal underlying land, at the suit of a purchaser who buys for speculation and delays for four years to demand performance, and who was not in a position to comply with his contract until after he had sold the coal to another.

Appeal from Circuit Court, Barbour County.

Bill by J. N. Wilkinson and others against R. D. Poling and others. Decree for plaintiffs, and defendants R. D. Poling and A. Thompson appeal.

*Reversed and bill dismissed.*

*W. T. Ice, Jr.,* and *Arthur S. Dayton,* for appellants.

*J. Hop Woods,* for appellees.

WILLIAMS, JUDGE :

From a decree of the circuit court of Barbour county, pronounced on the 7th October, 1911, enforcing specific performance of a contract for the sale of coal underlying a tract of 113 acres of land, at the suit of the purchaser, defendants have appealed.

On the 16th of July, 1901, R. D. Poling, the owner, sold the coal to George M. Price & Company, a partnership, at the price of $12 per acre to be paid when the coal was surveyed, the title examined and accepted and a deed made and delivered. If the purchaser did not comply within one year, the contract was to become void. The cash consideration was nominal. The contract was acknowledged by Poling on the

15th, and recorded the 18th, of July, 1902. On the 23rd April, 1902, George M. Price & Company notified Poling that they were ready to comply with it as soon as he complied with the conditions on his part. On the 19th May, 1902, George M. Price & Company assigned the contract, together with numerous other similar contracts which they held with other coal owners in the same locality, to J. N. Wilkinson and four others composing a partnership designated as the South Penn Coal Company. But prior to taking the assignment, the South Penn Coal Company had obtained from said R. D. Poling and Cora, his wife, an option to purchase the same coal at the price of $10 per acre. This option was dated 10th January, 1902, and was to expire on 1st May, 1902, if notice of acceptance was not given before that time. Notice of its acceptance was served on R. D. Poling on the 15th April, 1902, and it was recorded on the 25th April, 1902, upon proof of the signatures of said Poling and his wife, by two subscribing witnesses. It contained the following provision: 'First parties are not to be held liable for any damages by reason of a former option given to Price & Co., which option is hereby declared forfeited by first parties thereto.''

On the 24th October, 1902, plaintiffs wrote Poling pointing out certain defects in his title and requested that he have them ''removed as soon as possible.'' Four defects were specified in the letter, two being defective acknowledgments of married women, and two unreleased trust deeds. These defects were cured by the 27th January, 1903, and quitclaim deeds and releases recorded. Poling testifies that he notified plaintiffs that he had perfected his title, but received no further request or notice from them respecting the transaction until the bringing of this suit in 1906, and, supposing that the South Penn Coal Company had abandoned their intention to take the coal, he sold and conveyed it to Albert Thompson at $8.50 per acre and made him a deed for it on the 6th day of October, 1903, and on the 22nd September, 1905, said Thompson conveyed it, together with other coal, to the Philippi Collieries Company.

This suit was brought in April, 1906. Plaintiffs aver that they are entitled to have either of said contracts enforced, and tender with their bill $1,117.70, the price of the coal at

$10 per acre, less $11.30 paid when the second contract was made. The cause was heard on full pleadings and depositions of witnesses, on the 7th October, 1911, and a final decree entered, holding that plaintiffs were not entitled to have execution of the contract of January 10, 1902, but that they were entitled to have the earlier contract of July 16, 1901, which had been assigned to them, performed, and setting aside the deed from Poling to Thompson and the deed from Thompson and wife to the Philippi Collieries Company as clouds upon their title, and required said Poling and his wife to execute to them a deed, and, in default of their doing so, appointed a commissioner to make it.

Plaintiffs, the South Penn Coal Company, acquired no additional equities against Poling by taking an assignment of the prior contract which he made with George M. Price & Company. They knew of its existence when they took the option of January 10, 1902, which expressly declared it was forfeited. To claim under the first would be to repudiate what they assented to in the second contract. They agreed that the first should be declared forfeited, and contracted with Poling because they thought he had a right to declare it forfeited and consented, by accepting the contract from him containing a declaration of forfeiture, that he might do so. Therefore, whatever rights they acquired by assignment from George M. Price & Company were merged in the second contract and became extinguished. Both parties to the new contract were estopped from enforcing the old one. Are plaintiffs entitled to enforce the second contract? We think not. After writing Poling on October 24, 1902, notifying him of certain defects in his title, plaintiffs seem to have taken no further steps to complete their purchase until the bringing of this suit. They did not demand a deed, or make a tender of the purchase money or notify Poling that they were ready to pay on delivery of a proper deed, although Poling says he notified them that he had cleared his land of encumbrances. It appears from the record that they were not willing and ready at all times to carry out their contract. This is shown by their long delay and by letters written by J. N. Wilkinson, one partner, to W. W. Rainey, another partner, and from Wilkinson's affidavit and the affidavits of

D. M. Willis and J. T. Nixon, other members of the partner-
ship. · These letters and affidavits were used as evidence in a
suit brought by said Rainey against the other members of the
partnership for the purpose of a settlement of the partner-
ship business, and were introduced as evidence in the present
case. It appears that the partnership was formed for the
speculative purpose of getting together a large body of coal
by taking options from the individual property owners and
then selling it at a profit. They did in fact gather up several
thousand acres of coal in Barbour county, but lacked the
ready means to complete their contracts with some of the
owners. They had difficulty in finding a purchaser, but suc-
ceeded in 1905 in making sale to James M. Guffey of Pitts-
burg, and then they became active in closing up with the
property owners. In a letter written by Mr. Rainey to J. N.
Wilkinson, dated as late as December 13, 1903, he says: "I
am perfectly willing to sell the property at $15 per acre if
we can not get more. Something must be done at once, if
we hope to save the field at all." Furthermore, Poling testi-
fies that plaintiffs' agent who got from him the second con-
tract told him that the Standard Oil Company, or men
interested in the Standard Oil Company were backing plain-
tiffs. True, Nixon and Wilkinson deny, in their testimony,
that anyone authorized to represent them had authority to
make such statement. But Mr. Wilkinson's denial is not con-
sistent with what he says in a letter to Mr. Rainey, of date
April 29, 1902. In that letter he says: "But we will still
hold out the idea that the Standard Oil Co. is taking up the
field. I think it will be a good scheme. These people through
Allen furnish the money to take up the coal as fast as it is
surveyed and deeds made & titles examined and they pay for
all surveying in addition to the price for the coal which will
be quite an item." That letter was written after Mr. Wilk-
inson thought he had made a sale of the field to certain people
represented by Mr. Allen, and it clearly appears from what
Mr. Wilkinson therein says that he hoped to get the money
from that sale with which to complete the numerous pur-
chases which they had made.

Not until after they had sold to Guffey in 1905 did plain-
tiffs show readiness to comply with their contract with Pol-

ing. We think it is fairly proven that plaintiffs were trying to hold the field together, without paying the land owners, until they could effect a sale, and that, if they had not succeeded in making a sale, the whole scheme would have been abandoned; that, having paid only a nominal cash consideration, they were in a position to comply with their contract, or to back out from it if they chose to do so. Equity will not decree specific execution of a contract in favor of a purchaser who is not, at all times, ready and willing to fulfill his contract. "Equity will not decree specific performance to him who has not shown himself to have been ready, desirous, prompt and eager to perform the contract on his part, or if his conduct has indicated bad faith or virtual abandonment of the contract." *Buffalo Coal & Coke Co.* v. *Vance et al.*, 71 W. Va. 148. *Clay* v. *Deskins,* 36 W. Va. 350. Plaintiffs waited from January 10, 1902, to April, 1906, a period of more than four years, before they demanded execution of their contract. Then, after they had sold the coal field to Guffey and others, and after the price of coal had advanced, they became eager to have their contract of purchase with Poling enforced. We do not think they have shown either good faith or requisite diligence entitling them to equitable relief.

Thompson and the Philippi Collieries Company, having purchased after plaintiffs' contract was recorded, had constructive notice of it, and, of course, acquired no higher rights than Poling had. They stand in his shoes. But plaintiffs have shown no equities even against Poling their vendor. We reverse the decree and dismiss the bill.

*Reversed, and bill dismissed.*